UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
POLESTAR MARITIME LTD.,                                     :
:
            Plaintiff,                    :
:      09 Civ. 2673 (GEL)
    -against-                                          :
:      **OPINION AND ORDER**
NANJING OCEAN SHIPPING CO. LTD., et al.,                    :
:
            Defendants.                    :
:
------------------------------------------------------------x

Peter J. Gutowski, Edward J. Carlson, Freehill,
Hogan & Mahar, LLP, New York, New York,
for plaintiff.

GERARD E. LYNCH, District Judge:

       Plaintiff Polestar Maritime Ltd. brings this action against defendants Nanjing Ocean Shipping Co. Ltd. and Ningyuan Shipping Co., Ltd., alleging breach of a contract for the sale of an ocean going vessel. Plaintiff contends that its claims falls within this Court's admiralty jurisdiction, and seeks an *ex parte* order of maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Because the simple breach of a contract for the sale of a vessel does not give rise to federal admiralty jurisdiction, plaintiff's request will be denied and the complaint dismissed.

## BACKGROUND

       Plaintiff Polestar Maritime Ltd. is a foreign business organized and existing under the laws of another country, with a principal address in Mumbai, India. (Compl. ¶ 2.) Defendants Nanjing Ocean Shipping Co. Ltd. (a/k/a NASCO, YHM Shipping Co., Ltd.) and Ningyuan

Shipping Co., Ltd. are also businesses organized and existing under the laws of another country, with principal addresses in Nanjing, China, and Kingstown, St. Vincent and the Grenadines. (Id. ¶¶ 3-5.)

Plaintiff is the owner of the M/V REWA. (Id. ¶ 20.) In 2008, after determining that it would sell the M/V REWA, plaintiff contacted Aries Singapore ("Aries"), a Singapore-based international ship broker, for assistance in marketing the vessel. (Id.) Aries eventually received an inquiry from a London-based ship sale broker who indicated that its client was interested in purchasing the M/V REWA. (Id. ¶ 21.) A series of negotiations ensued, and on July 23, 2008, plaintiff and defendants entered into a memorandum of agreement (the "Agreement").[1] (Id. ¶¶ 22-26 & Ex. A.) Pursuant to the terms of the Agreement, the parties were scheduled to close the transaction in Singapore at the end of September 2008. (Id. ¶ 29 & Ex. A, § 5(b).) Plaintiff presented the vessel at the time and place agreed upon for the closing. (Id. ¶ 30.) However, defendants ultimately refused to close. (Id. ¶¶ 31-32.)

Plaintiff commenced this action on March 23, 2009. It contends that because the vessel was in all material respects in compliance with the terms of the Agreement, and because the vessel was available for transfer at the time and place designated by the parties, defendants' refusal to close constitutes a breach of contract entitling it to damages. (Id. ¶ 33.) As defendants cannot be found within this District for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, plaintiff now seeks to

---

[1] The Agreement identified YHM as the buyer, and was signed by John Ge, the general manager of NASCO. (Compl. ¶¶ 26-28 & Ex. B.) Plaintiff's complaint, however, alleges that each of the defendants are alter egos of the others, and are therefore liable for the debts and obligations of one another. (Id. ¶¶ 6-19.) Because this Opinion deals only with the Court's jurisdiction over this matter and the relationship between the defendant entities does not affect this determination, the Court accepts plaintiff's factual allegations as true.

restrain and attach defendants' tangible and intangible property in an amount up to and including $19,410,167. (Id. ¶¶ 46-47.)

## DISCUSSION

Pursuant to Rule B, a plaintiff under certain circumstances may attach a defendant's tangible or intangible property in an amount up to the amount in dispute. Such an attachment is proper only where "1) [a plaintiff] has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Here, the only issue for decision is whether plaintiff has presented a prima facie admiralty claim against defendants. If it has not, its request for relief pursuant to Rule B must be denied for lack of subject matter jurisdiction. See Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. Ltd., 591 F. Supp. 2d 505, 507 (S.D.N.Y. 2008); see also 28 U.S.C. § 1333(1).

Under well-established Second Circuit precedent dating back to 1918, "[a] contract to purchase a vessel is outside admiralty jurisdiction." CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 n.4 (2d Cir. 1982); see also Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 n.5 (2d Cir. 1989) ("Judge Leisure correctly ruled that admiralty jurisdiction under 28 U.S.C. § 1333 does not exist in actions involving the breach of a contract for the sale of a vessel."); The Ada, 250 F. 194, 195-96 (2d Cir. 1918). "[T]his Court cannot ignore binding Second Circuit precedent, unless it is expressly or implicitly overruled." World Wrestling Entm't, Inc. v. Jakks Pacific, Inc., 425 F. Supp. 2d 484, 499 (S.D.N.Y. 2006). See also Anderson v. Recore, 317 F.3d 194, 201 (2d Cir. 2003) ("We will follow a precedent from this circuit unless a Supreme Court decision or an en banc holding of this court implicitly

or explicitly overrules the prior decision."). Thus, plaintiff's position appears to be foreclosed by binding authority.

Plaintiff argues, however, that "[i]n the recent past, there has been considerable development and indeed adjustment in the landscape against which admiralty contract jurisdiction is evaluated." (Gutowski Ltr. at 2.) In particular, it asserts that the Supreme Court's decision in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004), and the Second Circuit's decision in Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307 (2d Cir. 2005), altered the test for determining whether a contract is maritime in nature, and that – under the newly-established standard – a dispute involving "a contract for [the] sale of an existing ship (the essence of all maritime commerce)" gives rise to federal admiralty jurisdiction. (Id.) Neither Kirby nor Folksamerica, however, had anything to do with contracts for the sale of ships, and thus neither can be said to have explicitly or implicitly overruled the Second Circuit authorities that are directly on point.

In Norfolk Southern Railway Co. v. Kirby, the Supreme Court noted that in "ascertain[ing] whether a contract is a maritime one, [a court] cannot look to whether a ship or other vessel was involved in the dispute, as [it] would in a putative maritime tort case. Nor can [it] simply look to the place of the contract's formation or performance. Instead, the answer 'depends upon . . . the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" 543 U.S. at 23-24, quoting North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125 (1919). The Court went on to remark that the "fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce. The conceptual approach [to assessing admiralty jurisdiction] vindicates that interest by focusing [a court's] inquiry on whether the principal objective of a

4

contract is maritime commerce. While it may once have seemed natural to think that only contracts embodying commercial obligations between the 'tackles' (*i.e.*, from port to port) have maritime objectives, the shore is now an artificial place to draw a line. Maritime commerce has evolved along with the nature of transportation and is often inseparable from some land-based obligations." Id. at 25. Because "technological change" in the shipping industry means that "goods can now be packaged in standardized containers, [and] cargo can move easily from one mode of transport to another," id., the Court ruled that "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce-and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." Id. at 27.

Following the Supreme Court's ruling in Kirby, the Second Circuit recognized that the proper inquiry for determining the existence of admiralty jurisdiction is "whether the principal objective of a contract is maritime commerce, rather than . . . whether the non-maritime components are properly characterized as more than 'incidental' or 'merely incidental' to the contract." Folksamerica, 413 F.3d at 315 (internal quotation marks and citation omitted). The Court of Appeals in Folksamerica, like the Supreme Court in Kirby, faced a contract with "mixed" maritime and non-maritime elements, in this case an insurance contract. Looking to "the risks the insurer assumed," id. at 317, and noting that "[t]hrough tailored endorsements, the Policy extends coverage to exposures particular to marine operations," id. at 318, the Court concluded that "[t]he two sections of the Policy together operate seamlessly to provide coverage that is primarily marine in nature." Id. at 323.

Plaintiff argues that Kirby and Folksamerica overruled The Ada and its progeny *sub silentio*. In Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. Ltd., Judge Scheindlin addressed

this issue and concluded that

> [g]iven their broad language, Kirby and Folksamerica support the demise of the holding in The Ada. As the Court noted in Kirby, whether a contract fall[s] within admiralty jurisdiction depends on "the nature and character of the contract." The MoA is not a contract for the securitization of payments on a leased ship, nor is it a contract regarding bonds issued to finance a ship. . . . [T]hese examples lack the "genuinely salty flavor" characteristic of admiralty cases. Rather, the MoA is a contract for the purchase of a launched ship that has been plying the seas for some time. As such, it has a distinctly "salty flavor," for the sole purpose of a ship is to sail. Moreover, the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce. Such commerce requires a vessel, sailors, and ship fuel, and there is simply no justification for including contracts for the latter two requirements in admiralty jurisdiction while excluding contracts for the former.

591 F. Supp. 2d at 509. Judge Scheindlin went on to find that even if Kirby and Folksamerica were to be read as limited to mixed contracts, the contract at issue would nevertheless satisfy that standard, as it sought to ensure that defendant would make any necessary repairs to the vessel. See id. at 510.

Plaintiff contends that this Court should adopt the conclusion of Kalafrana that Kirby and Folksamerica "eviscerated" The Ada and its progeny. The argument is unpersuasive. Neither Kirby nor Folksamerica expressly abrogated, or even so much as mentioned, the rule that a contract for the sale of a vessel does not fall within federal admiralty jurisdiction. Moreover, there is no direct contradiction between Kirby and Folksamerica, on the one hand, and the ship-sale cases, on the other, such that the former should be read as implicitly overruling the latter. Although Kirby adopts a different approach than that which originally guided the Second Circuit's ship-sale cases, the facts of Kirby have absolutely nothing to do with the sale of ships. The shift in analysis endorsed in Kirby was spurred by the changing conditions of maritime

6

commerce, and – in particular – the increased integration of ocean shipping and ground transport through sea-land networks. This increased integration necessitated a reformulation of the dividing line between ocean transport and non-maritime ground transport. It does not, however, require any reformulation of the nature of ship sales. Ships have always been ships. They sail the sea, and they are no "saltier" since the advent of containerized sea-land transportation networks than they were in the day of ships carrying break-bulk cargo. Any argument for considering the sale of a ship a maritime contract existed long before Kirby, yet the overwhelming weight of authority, in the Second Circuit and beyond, was that a contract for the sale of a ship is not maritime in nature. See Herman Family Recoverable Trust v. Teddy Bear, 254 F.3d 802, 804 (9th Cir. 2001); Magallanes Inv., Inc.. v. Circuit Sys., Inc., 994 F.2d 1214, 1217 (7th Cir. 1993); J.A.R., Inc. v. M/V Lady Lucille, 963 F.2d 96, 98-100 (5th Cir. 1992); Chase Manhattan Fin. Servs., Inc. v. McMillian, 896 F.2d 452, 460 (10th Cir. 1990); Int'l Shipping, 875 F.2d at 391 n.5 (2d Cir. 1989); Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 850 (11th Cir. 1988); CTI-Container, 682 F.2d at 380 n.4; Flota Maritima Browning de Cuba v. Snobl, 363 F.2d 733, 735 (4th Cir. 1966); The Ada, 250 F. at 195-96; Casco Marina Dev., LLC v. M/V Forrestall, 384 F. Supp. 2d 154, 160 (D.D.C. 2005); Gaster Marine Recovery & Sales, Inc. v. M/V "The Restless I", 33 F. Supp. 2d 1333, 1334 (S.D. Fla. 1998); Grand Banks Fishing Co. v. Styron, 114 F. Supp. 1, 3 (D. Me. 1953).

This Court adheres to that authority, just as the majority of district judges have done when confronted with this issue since Kirby. See Unicorn Bulk Traders Limited v. Fortune Maritime Enterprises, Inc., No. 08 Civ. 9710, 2009 WL 125751, at *3 (S.D.N.Y. Jan. 20, 2009) (Gardephe, J.) (concluding that the Supreme Court and the Second Circuit have not overruled The Ada and its progeny *sub silentio*, particularly given that the courts' recent decisions make

clear that a court "should not merely look to whether a ship or other vessel was involved in the dispute.") (quotation omitted); Vrita Marine Co. Ltd. v. Seagulf Trading LLC, 572 F. Supp. 2d 411, 412 (S.D.N.Y. 2008) (Rakoff, J.) ("Taking delivery of a vessel is not a maritime obligation and it does not implicate concerns of maritime commerce. It is a simple breach of a sale and purchase contract and does not turn a non-maritime contract into a maritime dispute."); Exmar Shipping N.V. v. Polar Shipping, S.A., No. 06 Civ. 12991, 2008 WL 3992290, at *3 (S.D.N.Y. Aug. 27, 2008) (Baer, J.) ("Contracts for the sale of ships are not cognizable in admiralty. Similarly, a breach of warranty in the sale of a vessel does not state a cause of action in admiralty either.") (citations omitted); Clements v. Preston, No. 05 Civ. 0209, 2005 WL 3371084, at *6 (S.D. Ala. Dec. 12, 2005). Thus, because the parties' Agreement is a simple contract for the sale of a vessel, it is not maritime in nature and plaintiff's request for relief pursuant to Rule B is denied for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the parties' memorandum of agreement is not maritime in nature and any dispute arising from the breach of that agreement does not fall within this Court's admiralty jurisdiction. Accordingly, plaintiff's request for relief pursuant to Rule B is denied, and the complaint is dismissed.

SO ORDERED.

Dated: New York, New York
April 13, 2009

_____
GERARD E. LYNCH
United States District Judge